Van Thomas CRAIG, Appellant,

v.

The STATE of Texas, Appellee.

No. 45259.

Court of Criminal Appeals of Texas.

April 19, 1972.

Rehearing Denied June 21, 1972.

Melvyn C. Bruder, Dallas (By Appointment on Appeal), Stanley I. Weinberg, Dallas (By Appointment on Appeal), for appellant.

Henry Wade, Dist. Atty., and Robert T. Baskett, Asst. Dist. Atty., Dallas, and Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The conviction is for robbery by firearms; the punishment, twenty-five years imprisonment.

At approximately 5:00 p. m., the evening of Friday, January 27, 1967, appellant entered the World Liquor Store on South Central Expressway in Dallas. After appellant had "browsed around" for about five minutes, one of the three employees present, Walter Speiwak, the manager, approached him and asked if he could be of any assistance. When appellant answered no, Speiwak told him he had "had sufficient time to browse around," and then said, "If you don't have anything in mind, would you mind leaving the store?" Appellant left in compliance with Speiwaks' request. Shortly thereafter, appellant returned to the store, armed with a .38 automatic pistol, and said, "This is a stickup." After the assistant manager had placed the money from the cash register in the paper sack, appellant directed the three employees and the one customer present to go to the back room of the store and get the remaining money, which was kept in a file cabinet. Speiwak, being in fear that his life would be taken or he would receive serious bodily injury, did as he was instructed. The appellant then left the storage room, closed the door, and said, "The first son-of-a-bitch that pokes his head out, I will get all of you." $4,300.00 in currency was taken.

In his first ground of error appellant urges "The prosecutors were guilty of bad faith in exhibiting and using before the jury a certain pistol which was never connected to either the offense or the appellant."

The State elicited testimony from the three attendants at the liquor store regarding the type and description of the weapon used in the commission of the crime. Two of these witnesses testified that State's Exhibit No. 1, a black .38 automatic pistol, appeared to be the same weapon as that used in the robbery.

Not until after the three witnesses had testified regarding the weapon used in the robbery did appellant's counsel object to "any more testimony about the gun unless the State will assure us they will connect the gun up with any type of predicate and connect up the chain of the gun to the circumstances of the defendant and offer tes-

timony as to where the gun came from. If they will not assure me of that and the court, we object to the use of the gun before the jury and we object to any more questions being asked about it." Appellant's objection was sustained and upon the appellant's request, the gun was removed from the courtroom. Thereafter, no mention was made of the gun by any witness, or by the prosecutors.

■■■ As in Rosales v. State, 473 S.W. 2d 474 (Tex.Cr.App.1971), a similar case where a pistol was exhibited before the jury, the only objection made by the appellant was sustained. He did not ask for any further relief. Consequently, no error is shown. The fact that the pistol was not formally introduced into evidence and was displayed before the jury prior to objection was not error. Valdez v. State, 462 S.W. 2d 24 (Tex.Cr.App.1970) and Pittman v. State, 438 S.W.2d 808 (Tex.Cr.App.1969). Appellant's assertion, made for the first time on appeal, that the display of the pistol before the jury was a prejudicial, tactical matter *undertaken in bad faith* is not supported by the record. This ground of error is overruled.

Appellant next contends "The State committed reversible error in commenting upon the defendant's failure to testify, in violation of Article 38.08, T.C.C.P." He specifically refers to that part of the argument made by the prosecution at the guilt-inno-cence stage of the trial wherein it was stated, "Now [the defense attorney] is going to get up here and probably try ev-everyone in the case except this defendant, which is usual in a robbery case. It is kind of hard to overthrow some eye-witnesses that say, 'This is the man that did it.' Like I told you on voir dire, it is kind of hard to say, 'I didn't do it.' How does he get around that? I will tell you how he will get around it, he will try everybody but the defendant. . . ."

■■■ The record reflects that no objection to the above argument was made at the time of trial. The error, if any, was not preserved. Appellant's ground of error is overruled. See Schreiner v. State, 478 S.W.2d 460 (1972); Blassingame v. State, 477 S.W.2d 600 (1972); Johnson v. State, 379 S.W.2d 329 (Tex.Cr.App.1964) and Van Bibber v. State, 371 S.W.2d 880 (Tex.Cr.App.1963).

Appellant's third and fourth grounds of error allege that "The grand jury panel which issued the true bill of indictment against appellant" and "the petit jury which tried and convicted appellant [were] selected in violation of the First and Fourteenth Amendments to the Constitution of the United States of America."

For the first time on appeal, appellant specifically challenges the constitutionality of Articles 19.34,[1] 35.02[2] and 35.22,[3] V.A.

1. "Art. 19.34 Oath of grand jurors
"When the grand jury is completed, the court shall appoint one of the number foreman; and the following oath shall be administered by the court, or under its direction, to the jurors: 'You solemnly swear that you will diligently inquire into, and true presentment make, of all such matters and things as shall be given you in charge; the State's counsel, your fellows and your own, you shall keep secret, unless required to disclose the same in the course of a judicial proceeding in which the truth or falsity of evidence given in the grand jury room, in a criminal case, shall be under investigation. You shall present no person from envy, hatred or malice; neither shall you leave any person unpresented for love, fear, favor, affection or hope of reward; but you shall present things truly as they come to your knowledge, according to the best of your understanding, so help you God.' "

2. "Art. 35.02 Sworn to answer questions
"To those present the court shall cause to be administered this oath: 'You and each of you, solemnly swear that you will make true answers to such questions as may be propounded to you by the court, or under its directions, touching your service and qualifications as a juror, so help you God.' "

3. "Art. 35.22 Oath to jury
"When the jury has been selected, the following oath shall be administered them

C.C.P. He urges that the concluding oaths required of grand and petit jurors under the above statutes "systematically exclude non-believers from said juries and that appellant, an atheist, was therefore deprived of judgments of his peers."

Appellant relies on Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961), and Schowgurow v. State of Maryland, 240 Md. 121, 213 A.2d 475 (1965). Such reliance is misplaced. Both of those cases arose under, and were, ultimately, successful challenges to, the state constitution of Maryland.[4] In *Schowgurow*, the contention was made that the Maryland Constitution required jurors to express a belief in the existence of God and that, therefore, juries were selected in violation of the First and Fourteenth Amendments of the United States Constitution. Article 36 of the Maryland Declaration of Rights provided:

"That it is the duty of every man to worship God in such manner as he thinks most acceptable to Him. All persons are equally entitled to protection in their religious liberties; wherefore, no person ought by any law to be molested in his person or estate, on account of his religious persuasion, or profession, or for his religious practice, unless, under the color of religion, he shall disturb the good order, peace or safety of the State, or shall infringe the laws of morality, or injure others in their natural, civil or religious rights; nor ought any person to be compelled to frequent, or maintain, or contribute, unless on contract, to maintain, any place of worship, or any minis-

try; *nor shall any person, otherwise competent, be deemed incompetent as a witness, or juror, on account of his religious belief; provided, he believes in the existence of God, and that under his dispensation such persons will be held morally accountable for his acts, and be rewarded or punished therefor either in this world or in the world to come.*" (Emphasis added.) Const.Md.Declaration of Rights, art. 36.

In reversing the appellant's conviction in *Schowgurow*, the Maryland Court of Appeals stated: "The conclusion is inescapable that every member of the grand jury which indicted the appellant and of the petit jury which tried him was required, as part of his oath or affirmation, to declare a belief in God, as a condition to his taking office." 213 A.2d at 478. There is no such requirement under either the Constitution or statutes of this state.

Article 3.01, V.A.C.C.P., provides:

"All words, phrases and terms used in this Code are to be taken and understood in their usual acceptation and common language, except where specially defined; and, unless herein specially excepted have the meaning which is given them in the Penal Code."

Under the chapter heading "Definitions," the Penal Code provides that "the word 'oath' includes affirmation." Article 27, V.A.P.C.

The statutes of which complaint is made should also be considered in light of Article 1, § 5 of the Texas Constitution, and

---

by the court or under its direction: 'You and each of you do solemnly swear that in the case of the State of Texas against the defendant, you will a true verdict render according to the law and the evidence, so help you God.'"

4. In *Torcaso*, the Supreme Court upheld the petitioner's attack of Article 37 of the Maryland Declaration of Rights which provided: "That no religious test ought ever to be required as a qualification for

any office of profit or trust in this State, other than a declaration of belief in the existence of God; nor shall the Legislature prescribe any other oath of office than the oath prescribed by this Constitution." There, a notary public appointed by the Governor of Maryland was denied a license by a country clerk because he refused to declare his belief in the existence of God. The religious test provided for in the Maryland Constitution was held to be unconstitutional.

Article 1.17, V.A.C.C.P. The Constitution provides:

"No person shall be disqualified to give evidence in any of the Courts of this State on account of his religious opinions, or for the want of any religious belief, *but all oaths or affirmations shall be administered in the mode most binding upon the conscience, and shall be taken subject to the pains and penalties of perjury.*" (Emphasis added.) [5]

In construing this Article, this court has previously held that it is constitutionally permissible that jurors be allowed to affirm instead of being sworn. "[T]here is nothing in the context, with reference to administering an oath to a juror to test him on his voir dire as to his qualifications, that would seem specially to require an oath and to exclude an affirmation; and we know of no particular reason why an oath should be required in this matter." Riddles v. State, 46 S.W. 1058, 1060 (Tex. Cr.App.1898); see also Stephens v. State, 93 Tex.Cr.R. 164, 245 S.W. 687, 688 (Tex. Cr.App.1922); 41 Tex.Jur.2d, Oath and Affirmation, § 4 at 678. Article 1.17, V.A.C. C.P., which is almost identical to the above constitutional provision, is to be construed similarly.

■ To the extent that prior decisions such as Crisp v. State, 87 Tex.Cr.R. 137, 220 S.W. 1104 (Tex.Cr.App.1920) and Hewey v. State, 87 Tex.Cr.R. 248, 220 S. W. 1106 (Tex.Cr.App.1920) are inconsistent with this holding, they are overruled.[6]

■ The statutes complained of are not unconstitutional. It is further noted that those statutes setting forth the qualifications for service on either a grand jury or petit jury contain no requirement of an expression of belief in a Supreme Being.

See Articles 35.12, 35.16 and 19.01, V.A.C. C.P.

■ In his argument under this ground of error, appellant asserts that as a result of the application of the above statutes, there was a "systematic exclusion of nonbelievers from grand jury and petit jury service . . ." There is nothing before this court to support this contention, and it is therefore, overruled. Jones v. State, 472 S.W.2d 515 (Tex.Cr.App.1971); compare, Muniz v. Beto, 434 F.2d 697 (5th Cir. 1970).

■ The appellant's ground of error number five, wherein he complains that the "State committed reversible error when the prosecutor altered the wording of the indictment in violation of Article 28.10, V. A.C.C.P.," is without merit. The appellant did not object to the reading of the indictment at the time it was read. The record does not reflect exactly what was read to the jury. It shows the following:

"THE COURT: Arraign the defendant. (Whereupon, the defendant was arraigned in open court and in the presence and hearing of the jury, by Mr. Hunsaker reading the indictment to the defendant.)

"MR. HUNSAKER (Prosecuting Attorney): That one Van Thomas Craig, is that your name?

"THE DEFENDANT: Yes, it is. (Whereupon, Mr. Hunsaker continued reading the indictment in open court and in the presence of the jury and in the presence of the defendant.)

"THE COURT: How pleads the defendant?

"THE DEFENDANT: Not guilty.

---

5. Vernon's Ann.Civ.St., Article 25, also provides:
   "All oaths and affirmations shall be administered in the mode most binding upon the conscience of the individual taking same and shall be subject to the pains and penalties of perjury."

6. *Crisp* and *Hewey* both held that the omission of the words "So help me God," from the oath administered to jurors required that the verdict of guilt rendered by them be set aside.

"THE COURT: The defendant pleads not guilty. Present the indictment.

"MR. HUNSAKER: Ladies and gentlemen of the jury, the indictment in this case reads as follows: (Whereupon Mr. Hunsaker presented the indictment to the jury by reading the indictment in open court in the presence of the jury and the defendant.)"

This ground of error is overruled.

 Appellant's ground of error number six urges "Evidence presented was insufficient to prove that appellant acted together with John Larry Cotten, as alleged in the indictment." Appellant argues that it was necessary at appellant's trial for the State to prove that appellant "acted together with John Larry Cotten in the commission of the offense, and that the failure to do so was a fatal variance from the indictment which named both parties."

"An indictment charging two or more defendants with the commission of an offense need not contain an allegation that they 'acted together' and such allegation, if made, not being descriptive, may be rejected as surplusage." 2 Branch's Ann.P.C. § 704 at 2 (2d ed. 1956); Gibson v. State, 448 S.W.2d 481 (Tex.Crim.App.1969).

The allegation, which was surplusage, need not have been proved. This ground of error is overruled.

▮ Appellant next contends "Reversible error occurred when the prosecutor stated his personal opinion about appellant's guilt in final argument." The court's attention is directed to the following exchange:

"MR. TOKOLY (Prosecuting Attorney): Now, Mr. Miller says that the only issue on this case is whether or not it was this man. I submit to you there is no issue on that fact, this is the man. Members of the jury, what are we talking about here? We are talking about—

"MR. MILLER (Defense Counsel): We are going to object to him stating that this is the man unless he can base upon evidence, Sir.

"THE COURT: The Court will sustain the objection."

There was no request that the jury be instructed to disregard their remarks and appellant made no motion for mistrial. The error, if any, is not preserved. Schreiner v. State, *supra*; Blassingame v. State, *supra*.

▮ We note that the judgment in this case erroneously recites that appellant pleaded guilty. The docket sheet, transcription of testimony and charge to the jury all conclusively show that appellant entered a plea of not guilty. Where the record before this court is sufficient to allow reformation of a judgment, such judgment may be reformed on appeal. Vasquez v. State, 477 S.W.2d 629 (1972); Golden v. State, 434 S.W.2d 870 (Tex.Cr.App. 1968). The judgment is reformed to reflect that appellant entered a plea of not guilty.

The judgment, as reformed, is affirmed.

Opinion approved by the Court.