**Madalyn Murray O'HAIR and Society of Separationists, Inc., Plaintiffs-Appellants,**

v.

**John HILL et al., Defendants-Appellees.**

**No. 79–1397.**

United States Court of Appeals, Fifth Circuit.

April 2, 1981.

Madalyn Murray O'Hair, pro se.

Jon Murray, Robert A. Vort, Newark, N. J., for plaintiffs-appellants.

Mark White, Atty. Gen., Susan Bradshaw, Susan J. Dasher, Asst. Attys. Gen., Austin, Tex., for H. Jones, Clark, Dear and Dellana.

James McMurtry, County Atty., B. Neal Stokey, Asst. County Atty., Russell J. Bailey, Austin, Tex., for B. Jones, Renfro, Samuelson, Monts, Richards and Moya.

Susan O'Laughlin Bradshaw, Asst. Atty. Gen., for John Hill et al.

Before CHARLES CLARK, TJOFLAT and GARZA, Circuit Judges.

TJOFLAT, Circuit Judge:

The appellants in this case, Madalyn Murray O'Hair (O'Hair) and the Society of Separationists, Inc. (Society), commenced this action under 28 U.S.C. § 1343(3) & (4) (1976) and 42 U.S.C. § 1983 (Supp.1980), alleging a complex series of constitutional violations. In affirming the district court's dismissal of this suit, we shall address briefly each of these alleged violations, striving, as we do so, to construe them as properly pleaded.

We have isolated ten claims upon which varied forms of declaratory, injunctive and monetary relief are requested. All of these claims have their origin in article 1, section 4 of the Texas Constitution. This provision reads:

No religious test shall ever be required as a qualification to any office, or public trust, in this State; nor shall anyone be excluded from holding office on account of his religious sentiments, provided he acknowledge the existence of a Supreme Being.

Tex.Const. art. 1, § 4. Because of the disposition of this appeal, we emphasize at the outset that we express no opinion as to the constitutionality of this provision.

The appellants' first claim is that section four should be declared a violation of the first amendment's prohibition of the establishment of religion. Appellants lack standing to raise this claim. Pleading of an injury in fact is a prerequisite for mainte-

nance of an action in federal court. *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 152, 90 S.Ct.. 827, 829, 25 L.Ed.2d 184 (1970). *See also Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Appellants have pleaded no cognizable injury in relation to this claim. They do not allege any effect the asserted establishment of religion has had on them, *see*, e. g. *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), but, rather, have merely stressed that section four is facially in violation of the establishment clause of the first amendment. This is inadequate. This claim for declaratory relief, therefore, must be denied.

■ Appellants next contend that a declaratory judgment should issue proclaiming article 1, section 4 of the Texas Constitution a violation of the constitutional guarantee of a republican form of government. U.S.Const. art. 4, § 4. This is clearly a nonjusticiable political question, and must be dismissed on that ground. *Luther v. Borden*, 48 U.S. (7 How.) 1 (1849).

■ The third contention we are faced with is that a judgment should issue declaring section four in violation of the constitutional guarantee of equal protection. This claim is based upon the allegation that O'Hair was in fact excluded, and that in the future other Society members will be excluded, from jury service because of a belief in atheism. Appellants have standing to allege this claim, *Carter v. Jury Commission of Greene County*, 396 U.S. 320, 329–330, 90 S.Ct. 518, 523–24, 24 L.Ed.2d 549 (1970), but we are compelled to abstain from resolution of the issue. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), mandates avoidance of a decision which would be based upon a tentative interpretation of state law. We cannot anticipate with the requisite certainty whether Texas courts understand section four to require the exclusion of atheists

from jury service. *See Madeley v. Kern*, 488 F.2d 865, 866 (5th Cir. 1974); *Cobb v. State*, 503 S.W.2d 249, 252 (Tex.Cr.App. 1973); *Craig v. State*, 480 S.W.2d 680, 683–684 (Tex.Cr.App.1972). Appellants do not point to any authoritative state interpretation of section four that puts its constitutional implications in regard to jury service beyond peradventure, and thus we shall avoid a potentially unnecessary and intrusive resolution of this constitutional issue until adequate state decisional grounds exist upon which we may act.

Next, appellants request that this court enjoin four state civil proceedings pending against O'Hair. It is alleged that these civil cases are progressing before judges and juries selected pursuant to the requirements of section four, more precisely, that the judge and jury in each of the four named state civil proceedings pending against O'Hair were required to "acknowledge the existence of a Supreme Being." This requirement, it is argued, denied O'Hair due process of law by subjecting her to an inherently biased judge and to a jury not selected from an appropriate cross-section of the community suited in character and intellect for jury duty. *See Carter v. Jury Commission of Greene County*, 396 U.S. 320, 332–33, 90 S.Ct. 518, 525, 24 L.Ed.2d 549 (1970).

■ Sound jurisprudence requires "that courts of equity should not act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). *See also O'Shea v. Littleton*, 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974). O'Hair asserts that she has no remedy at law because the Texas Constitution places section four, the source of the alleged denial of due process, beyond the interpretative reach of the Texas courts. Article 1, section 29 of the Texas Constitution reads in pertinent part:

To guard against transgressions of the high powers herein delegated, we declare that everything in the "Bill of Rights" [which includes article 1, section 4] is

excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto ... shall be void.

This provision allegedly denies all jurisdiction to Texas courts to remedy any constitutional defects inherent in section four. Thus, the argument proceeds, any legal remedy sought in the Texas courts would be impossible of implementation (herein is contemplated such legal remedies as disqualification of the relevant judges and juries), and therefore federal equitable relief is mandated.

■ For us to adopt this reasoning would require a definitive determination on our part of the import of article 1, section 29, an issue as yet unresolved by the Texas courts. This is decidedly a matter of state concern, and the mandate of *Pullman, supra,* precludes us from so overreaching into the realm of unresolved state jurisprudence. We must leave the interpretation of the Texas Constitution to the Texas courts until we can act with certainty on what is, in this case, surely a matter of particular concern to the state. Until such a definitive state interpretation is available, we cannot hold that O'Hair has no adequate state remedy at law, and until that time, federal equitable relief must be denied.

O'Hair's next claim is for an injunction halting state criminal proceedings currently pending against her in Texas. The grounds for this injunction are the same as those offered as the basis for the requested injunction of the four state civil cases discussed previously. For the same reasons we advanced for rejection of that injunction request, coupled with those federalist concerns expressed in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) which come to the fore when a litigant seeks to enjoin state criminal proceedings, we must refuse to enjoin the Texas case. In sum, concerning the enjoining of these proceedings, O'Hair has demonstrated neither an absence of an adequate legal remedy, nor has she approached the threshold of the demonstration required for federal intervention in state criminal proceedings.[1]

---

1. Judge Clark has dissented to our disposition of O'Hair's fourth, fifth and sixth claims. For the sake of clarity, we shall address the substance of Judge Clark's contentions here.

The dissent maintains that abstention in regard to both article 1, § 4 and article 1, § 29 are inappropriate. We must emphasize that we have abstained from attempting a definitive interpretation of article 1, § 29, *not* from a discussion of the constitutionality of article 1, § 4. Thus, our decision turns upon what we feel to be O'Hair's failure to demonstrate the prerequisite of an absence of a legal remedy—an availability to be determined by a definitive Texas interpretation of article 1, § 29. More specifically related to our decision to abstain from interpreting article 1, § 29, the dissent urges that because O'Hair's claim goes to the validity of the Texas judicial system, it is inappropriate for us to defer to that system for a determination of whether Texas would provide a legal remedy: "To say that she [O'Hair] has an adequate legal remedy to redress this claim by going to the very system she seeks to have condemned seems illogical to me." *Infra* at 313.

Initially, we must state that we do not hold that O'Hair has a legal remedy under Texas law, only that she has failed to demonstrate the absence of one. Next, we believe that the substance of O'Hair's complaint does not make the Texas courts an inappropriate forum to determine whether article 1, § 29 precludes judicial scrutiny of article 1, § 4. The very oath which O'Hair finds offensive binds the Texas judiciary to uphold the law, including the Constitution of the United States. If, on principled evaluation, the intent of article 1, § 29 does not mandate holding article 1, § 4 inviolate, we believe the Texas courts will, in loyalty to that oath, so hold. By analogy to the commonplace of a judge's duty to rule fairly on a recusal motion, we find the dissent's assertion simply untenable.

Our system of justice requires reliance upon the integrity of the judiciary. Whether or not a claim strikes at the heart of the system of which he is a part, we must rely on a judge's loyalty to the law to dictate an honest, principled response to the bona fides of that claim. In the context of O'Hair's case, to hold otherwise would require the disqualification of the entire Texas judiciary, a theoretically inappropriate, as well as plainly impractical result.

Furthermore, although not necessary to the resolution of this appeal, we must also express another ground of disagreement with the dissent. O'Hair has made a blanket allegation that she has been denied her due process right to a fair trial because the procedure for selection of judges in Texas excludes atheists from judicial service. O'Hair, however, has not given any indication of how her due process rights have been specifically infringed; she has

■ The Society has joined O'Hair in petitioning for injunctions impeding these civil and criminal proceedings. Because the Society has no standing to do so, *see Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), we need not reiterate the above arguments in relation to it.

■ The sixth claim offered by appellants is that a judgment should issue declaring the application of section four in the context of the four civil and one criminal Texas proceedings pending against O'Hair an unconstitutional denial of due process and equal protection. As has been discussed, equitable considerations force us to abstain from interference with these Texas proceedings; those same considerations compel us to deny declaratory relief. If we were to declare section four's application unconstitutional in the very context wherein we acknowledged our duty to abstain from interfering by way of injunction, we would be acting in clear self-contradiction. "[O]rdinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid." *Samuels v. Mackell*, 401 U.S. 66, 72, 91 S.Ct. 764, 767, 27 L.Ed.2d 688 (1971). Such relief is therefore inappropriate, and will be denied.

■ The seventh claim presented is that the payment of salaries to all those holding office or positions of trust in Texas should be enjoined because those salaries are paid pursuant to the requirement of section four that all such persons acknowledge the existence of a Supreme Being, which requirement is unconstitutional. Neither appellant has alleged adequately that this unconstitutionality has caused injury; indeed, there is merely the assertion that *if* appellants *were* employed in public office, they could not be paid for such service due to section four. This is a purely speculative injury. In the absence of an adequate pleading of injury, there is no standing to prosecute this claim. *Association of Data Processing Service Organizations v. Camp*, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970).

■ Similarly, appellants have not alleged any injury, and thus they do not have standing to seek an injunction preventing any elections in Texas until section 4 is ruled unconstitutional. Appellants assert that any elections held while section four effectively requires a belief in a Supreme Being as a prerequisite to holding public office are necessarily unconstitutional, yet appellants have not alleged a desire or plan to seek a public office, nor have they alleged how the general election process harms them given their lack of intent to seek office. Appellants do have standing, however, to seek to enjoin any further seating of juries due to the allegedly unconstitutional refusal to allow atheists, and thus appellants, to serve as jurors. Because we

---

presented no facts indicating that she has received anything but fair trials in her state court proceedings.

The dissent, however, indulges O'Hair's claim in the absence of a showing of injury. Apparently the dissent has concluded, by reference to unarticulated empirical understandings, both that there is a substantial probability that judges selected from a candidate pool which excludes atheists will provide an atheist with a fundamentally unfair trial, and that this probability is incapable of factual demonstration. Thus, the dissent would make two very striking presumptions: first, that injury, in the form of the denial of due process, will necessarily accompany the trial of an atheist before a judge selected from a group of nonatheists; and second, that the presumed injury is necessarily causally related to the alleged exclusion of atheists from judicial service.

We believe that a claim premised upon a denial of a due process right to a fair trial is hardly an appropriate vehicle for attacking the constitutionality of Texas' judicial selection procedure. This case does not present the situation of an individual being denied the right to serve as a judge because of a refusal to express a belief in a supreme being. *See Torcaso v. Watkins*, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961). Rather, here we have a litigant claiming that a judicial selection procedure has denied her the due process right to a fair trial. In the absence of a colorable demonstration of an instance of unfairness in the conduct of her trials, however, we find it inappropriate to discern a cognizable injury. *See Rose v. Mitchell*, 443 U.S. 545, 573–576, 99 S.Ct. 2993, 3009–3010, 61 L.Ed.2d 739 (Stewart, J., dissenting). *See also Barksdale v. Blackburn*, 639 F.2d 1115 (5th Cir. 1981).

cannot assume that Texas will necessarily interpret section four to require the exclusion of all atheists from jury service, however, *see Cobb v. State, supra,* and *Craig v. State, supra, see also supra* at 310. *Pullman* mandates our abstention in regard to this issue.

 Finally, appellants request damages "for the violation of their civil rights and liberties ... for any violations which are proved to have occurred subsequent to the filing of this action." Amended Complaint of Appellants, record, vol. 1 at 58. The record in this case is devoid of proof of any monetary damages suffered since the filing of this action that may be attributed to a judicially cognizable violation of civil rights stemming from article 1, section 4 of the Texas Constitution.

For the foregoing reasons, the judgment of the district court must be

AFFIRMED.

CHARLES CLARK, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's dispositions of all plaintiffs' claims except those identified as the fourth, fifth, and sixth claims raised by Ms. O'Hair, and the portions of her final claim for damages which arise from those claims as to which I disagree.

In *Craig v. State,* 480 S.W.2d 680 (Tex.Cr. App.1972), the Texas Court of Criminal Appeals held jurors were not required to acknowledge the existence of a Supreme Being. The court in *Craig* did not explain the function of or indeed even mention Article 1, Section 4. It did assert that the Texas Constitution contained no requirement such as the Maryland constitutional provision condemned in *Schowgurow v. State,* 240 Md. 121, 213 A.2d 475 (1965), which read in pertinent part: "... nor shall any person, otherwise competent, be deemed incompetent as a witness, or juror, on account of his religious belief; provided, he believes in the existence of God ...." The only reasonable interpretation of *Craig* [which was followed in *Cobb v. State,* 503 S.W.2d 249 (Tex.Cr.App.1973), without reasoning] is

that jurors serving the State of Texas hold no "office." Again without discussing Article 1, Section 4, this court affirmed the refusal of a writ of habeas corpus based on a holding that exhaustion was required on a claim that atheists were excluded from grand and petit jury service by the statutory requirement of an oath which invoked God's help. *Madeley v. Kern,* 488 F.2d 865 (5th Cir. 1974). Because of this possible ambiguity, I concur in the majority's abstention on this claim.

A judge is an officer of the state in every sense of the term. Not even the broadest sweep of these juror decisions could convince me that a Texas court could say that the Texas Constitution's explicit exclusion of atheists from holding "office" does not cover judges. Therefore, I see no possibility that article 1, section 4 could be interpreted so as to moot or substantially change this constitutional question for O'Hair's case today. The majority asserts courts of Texas have not yet held that article 1, section 29 really preserves "inviolate" the command of article 1, section 4. Based on this assertion they see a remedy at law in the courts of Texas which warrants dismissal of her claims in this court. With deference, I cannot follow this reasoning. O'Hair asserts the courts of Texas are staffed with judicial officers who were chosen unconstitutionally. To say that she has an adequate legal remedy to redress this claim by going to the very system she seeks to have condemned seems illogical to me. Consequently, I would hold *Pullman* abstention as to article 1, sections 4 and 29 is inappropriate, *Chancery Clerk of Chickasaw County, Mississippi v. Wallace,* 646 F.2d 151 at 154 (5th Cir. 1981), and that O'Hair has no adequate remedy at law in the courts of Texas.

This brings me face-to-face with the issue of whether O'Hair presents a valid constitutional challenge to the trials described in claim four because they are before a judge or judges selected from a group which excludes atheists. My position that she can does not say that she is entitled to have an atheist try her cases. Clearly, she is not. I maintain no more than that due process and equal protection mandate her entitlement

to have officials who exercise this intimate control over her affairs and effects chosen from a group which has no ordained religious bias. The same constitutional right that guarantees a black the right not to be tried by a judge who had to be chosen from an all-white group is operative here.

The same reasoning applies to the fifth claim in which O'Hair seeks injunctive relief against her criminal prosecution on the same ground—that her judge was chosen from a group which excludes atheists. I agree with the majority that the Society lacks standing to advance either the fourth or fifth claims.

The sixth claim seeks declaratory relief parallel to the injunctive relief sought in claims four and five. The majority rejects the claim in the name of consistency. The same consistency means I must dissent from that ruling on claim six since I reach the opposite result on claims four and five. Consistency also requires my dissent from so much of O'Hair's claims for damages as relate to O'Hair's fourth, fifth and sixth discussed above.