**UNITED STATES of America, Plaintiff-Appellant,**

v.

**ERNST & WHINNEY, a general partnership, et al., Defendants-Appellees.**

**No. 83–8009.**

United States Court of Appeals, Eleventh Circuit.

July 6, 1984.

As Amended on Denial of Rehearing Aug. 29, 1984.

Barbara V. Tinsley, Asst. U.S. Atty., Atlanta, Ga., Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Division, Michael L. Paup, Chief, Appellate Section, Richard Farber, Farley P. Katz, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Trammell E. Vickery, Atlanta, Ga., Daniel F. Kolb, Nancy Grunberg, Washington, D.C., for defendants-appellees.

Before HILL, VANCE and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

The United States filed this civil suit seeking to enjoin the accounting partnership Ernst & Whinney from actions allegedly interfering with the administration of Internal Revenue laws. The district court dismissed the action, finding that it lacked the power to issue an injunction pursuant to either 26 U.S.C.A. § 7402 (West 1967) or 26 U.S.C.A. § 7407 (Supp. 1983), the statutory provisions pled by the

United States. Because we conclude that each statutory provision could support the issuance of an injunction under certain of the facts alleged by the United States, we reverse and remand.

## I. FACTUAL AND PROCEDURAL HISTORY

In March 1982, the government (hereinafter "IRS") filed a complaint against Ernst & Whinney and various individuals (collectively referred to as "Ernst") in the United States District Court for the Northern District of Georgia. Despite the fact that the record contains much dispute over the actions complained of by the IRS, we are bound to accept the complaint's allegations as true in reviewing the dismissal of the action. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

The IRS claims focused on Ernst's promotion and use of a service designed to expand its client's ability to claim investment tax credits. The tax credit, 26 U.S. C.A. §§ 38, 46–48 (West 1967), allows a taxpayer to credit against its federal income tax liability a percentage (generally 10%) of the cost of "qualifying property." The principal types of property qualifying for this treatment are tangible personal property and other tangible property used as an integral part of various manufacturing and business activities, but not including buildings and their structural components. 26 U.S.C.A. § 48(a).

According to the complaint, Ernst identifies a taxpayer potentially eligible for the credit (*e.g.*, a company constructing a new building) and approaches the party, making representations about possible tax savings through expanded use of the credit. If the party chooses to take Ernst's advice, consultants identify items of the property which are eligible for the credit and then obtain cost information about those items. A final study is then prepared, describing by specific terminology the items of property eligible for the credit and the associated costs.

The IRS contends that Ernst systematically develops misleading terminology for items not subject to the credit so as to improperly claim them as "qualifying property" within the statute.[1] The result is a possibly drastic overuse of the tax credit by claims on ineligible property and the employment of bogus descriptions that frustrate IRS attempts to discover the improper claims. To stop this abuse, the IRS sought to enjoin Ernst from (1) promoting its investment tax credit service; (2) advising clients to use deceptive terminology to claim a credit for property not clearly eligible; (3) creating misleading audit documentation in support of the bogus claims; and (4) hindering IRS attempts to discover the identities of taxpayers who use the Ernst service.[2]

The IRS pled two statutory provisions as support for its request that the court enjoin Ernst. The first, 26 U.S.C.A. § 7402(a) provides as follows:

---

1. The complaint alleges various specific instances in which Ernst, by *suggesting unusual terminology*, advised clients to claim credit for property *clearly* not eligible for the investment tax credit. Allegations include, for example, that ineligible concrete block walls were referred to as "knock-out panels"; a section of a roof on a building was called an "equipment support"; fixed walls were denominated "movable partitions-gypsum"; and doors were called "movable partitions-wood." In other instances the terminological changes are alleged to have been used to qualify properties which are only arguably subject to the credit. In all cases, the unusual language is alleged to have hindered IRS attempts to discover claims for which there is either no basis or only questionable support.

2. In a parallel development, the IRS issued, in March 1982, two "John Doe" summonses, 26 U.S.C.A. § 7609 (Supp.1984), seeking records from Ernst concerning the clients who had utilized the tax credit service. Ernst complied with one summons and turned over records for clients in the "Southeast region" (Florida, Georgia, Alabama, Kentucky, Tennessee). The second summons, covering all clients outside the Southeast region, was not complied with. However, following an enforcement proceeding brought by the IRS, the United States District Court for the Northern District of Ohio ordered Ernst to comply. *United States v. Ernst & Whinney*, 584 F.Supp. 1073 (N.D.Ohio 1984), appeal filed.

The district court of the United States, at the instance of the United States, shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica,* orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the Internal Revenue laws.

The second provision, 26 U.S.C.A. § 7407, is part of a general scheme regulating the activities of "income tax return preparers" [3] and it allows injunctions to be issued for various offenses by "tax preparers." Section 7407(c) provides, however, that a "tax preparer" charged with conduct subject to penalties under §§ 6694–5 of the statute [4] can block an action for injunction by filing a $50,000 bond with the IRS as surety for the penalties.[5]

After the IRS initiated this lawsuit, Ernst filed the $50,000 bond provided for in § 7407(c). It then filed a motion to dismiss, arguing that the filing of bond barred any injunction against it as a "tax preparer" pursuant to § 7407, and that § 7402 did not give the court power to enjoin any other activities complained of.

The district court accepted Ernst's contentions and dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6). *United States v. Ernst & Whinney,* 549 F.Supp. 1303 (N.D.Ga.1982). The court found it unnecessary to resolve the factual issue of whether Ernst was acting in the capacity of a "tax preparer" subject to § 7407 remedies, or whether Ernst was merely acting as a "tax adviser" [6] and thus not subject to the statutory regulation of preparers. To the extent that Ernst was acting as a "tax preparer," the court below found that the conduct alleged by the IRS was subsumed within the category of "penalty conduct" for which the filing of a bond would preclude an action for injunction. Because the company had filed the bond, the court concluded that Ernst was no longer subject to injunction. 549 F.Supp. at 1306–09. The district court also found itself without authority to enjoin activities of Ernst which might have been taken in its capacity as a "tax adviser." In this regard, the court held that § 7402 did not, by itself, allow for an injunction in the absence of an allegation that Ernst had breached a specific statutory duty imposed by a substantive provision of the Internal Revenue Code. *Id.* at 1311. The IRS brings this appeal.[7]

We discuss first the availability of the injunctive remedy with respect to activities which Ernst may have undertaken as a "tax adviser," concluding that § 7402 does empower district courts to enjoin such activities. Then we discuss activities which Ernst may have conducted as a "tax preparer," concluding that some activities fall

**3.** Whether or not Ernst is a "tax preparer" subject to § 7407 is a factual determination that has not yet been made by the district court. 26 U.S.C.A. § 7701(a)(36)(A) (Supp.1983) defines "income tax return preparer" as "any person who prepares for compensation ... any return of tax imposed by subtitle A" (*i.e.,* income tax). Regulations establish that a person who renders advice directly relevant to an entry that makes up a "substantial portion" of a return may be a "tax preparer." 26 C.F.R. 301.7701(15)(b)(1) (1983). That determination depends, however, on an individual examination of each return in question. Therefore, it is conceivable that Ernst may be a preparer on some returns and not on others.

**4.** 26 U.S.C.A. § 6694 (Supp.1983) assesses penalties for the understatement by a preparer of a taxpayer's liability. A preparer who understates liability due to a negligent or intentional disregard of rules and regulations may be assessed a penalty of $100 for each return. A preparer who willfully understates a taxpayer's liability shall be fined $500 for each affected return. 26 U.S.C.A. § 6695 (Supp.1983) assesses additional penalties against preparers who fail to identify themselves on returns or fail to keep sufficient records.

**5.** The specific provisions of § 7407 are discussed more fully below, particularly at § III, *infra.*

**6.** "Tax adviser" is not a statutory term, but we use it to denote the function of Ernst in situations where it is not a "return preparer." *See United States v. Ernst & Whinney,* 549 F.Supp. at 1309.

**7.** In addition to the briefs, each party submitted post-argument letters pursuant to Fed.R.App.P. 28(j). We have considered those letters.

within the "penalty conduct" category shielded from injunction by virtue of the § 7407(c) bond provision, but also concluding that some alleged activity may fall outside the "penalty conduct" category. The latter activities would thus be subject to the § 7407 injunctive remedy notwithstanding the filing of a bond.

## II. ERNST AS A "TAX ADVISER"

We first consider the operation of § 7402(a) as it supports injunctive relief against activities not falling within the provisions regulating tax preparers. 26 U.S.C.A. § 7402(a) gives district courts the jurisdiction to issue injunctions in civil actions "as may be necessary or appropriate for the enforcement of the Internal Revenue laws." In this case, the government filed a civil suit seeking an injunction against an alleged interference with tax enforcement. Thus, at a first glance, the government's suit seems to fit precisely within the statutory provision.

Ernst argues, however, that § 7402(a) is merely a jurisdictional statute and that the enumerated remedies cannot be invoked against it unless the government proves that Ernst has itself violated some specific tax provision by its advising activities. The district court found no "requisite underlying Code section [that creates] some duty on the part of the defendant sought to be enjoined." 549 F.Supp. at 1311. Be-

cause of the lack of a specific duty, the district court held that no injunction could issue under § 7402(a).

■ We reject the district court's narrow construction of § 7402(a) and hold that there need not be a showing that a party has violated a particular Internal Revenue Code section in order for an injunction to issue. The language of § 7402(a) encompasses a broad range of powers necessary to compel compliance with the tax laws. *See United States v. First National Bank,* 568 F.2d 853, 855–56 (2d Cir.1977); *Brody v. United States,* 243 F.2d 378, 384 (1st Cir.1957). It has been used to enjoin interference with tax enforcement even when such interference does not violate any particular tax statute. *See United States v. Ekblad,* 732 F.2d 562 (7th Cir.1984) (§ 7402 used to enjoin individual's harassment of IRS agents designed to hinder their effectiveness); *United States v. Hart,* 701 F.2d 749 (8th Cir.1983) (same); *United States v. VanDyke,* 568 F.Supp. 820 (D.Or.1983) (same).[8] Furthermore, the statute has been relied upon to enjoin activities of third parties that encourage taxpayers to make fraudulent claims. *United States v. Landsberger,* 692 F.2d 501 (8th Cir.1982); *United States v. May,* 555 F.Supp. 1008 (E.D.Mich.1983).[9] These cases demonstrate that § 7402(a) does give the district court the power to enjoin Ernst's activities as a tax adviser.[10]

---

**8.** The district court relied principally on *United States v. Mobil Corp.,* 543 F.Supp. 507 (N.D.Tex. 1981), in holding that § 7402(a) would not authorize an injunction in the absence of a specific statutory violation. In *Mobil,* the district court denied the IRS's request for an injunction commanding inspection of records because Congress had provided an administrative proceeding to serve precisely that purpose. In discussing § 7402(a), the court stated

That statute gives this court jurisdiction to order compliance with other Code provisions, including § 6001. It does not itself create a right to inspect.

543 F.Supp. at 519. The district court's conclusion that § 7402(a) creates no right to inspect is clearly correct in light of congressional intent that IRS inspection be carried out pursuant to 26 U.S.C.A. § 7602 *et seq.,* with the procedural safeguards therein provided. That conclusion does not govern this case in which there is no

analogous administrative procedure. To the extent that *Mobil* may imply that § 7402(a) is only available to order compliance with other Code sections, we expressly disagree.

**9.** In both *Landsberger* and *May,* the government sought injunctions based on either § 7402(a) or § 7407. Each court found that either provision would support an injunction, thereby obviating the need to determine whether the individual in the case was a "return preparer."

**10.** Ernst cites various cases for the proposition that the United States has no general right to obtain an injunction barring "interference." *United States v. Philadelphia,* 644 F.2d 187 (3d Cir.1980); *United States v. Mattson,* 600 F.2d 1295 (9th Cir.1979); *United States v. Solomon,* 563 F.2d 1121 (4th Cir.1977). These cases are inapposite because they each involved attempts by the United States to seek injunctions *on be-*

■ Of course, our legal conclusion is no indication of the propriety of injunctive relief against Ernst in the instant case. In addition to factual disputes that must be resolved, the decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the district court's use of the equitable remedy. *See, e.g., Hecht Co. v. Bowles,* 321 U.S. 321, 329–30, 64 S.Ct. 587, 591–592, 88 L.Ed. 754 (1944) (court reviews statute allowing injunctions to stop violation of Emergency Price Control Act, concludes that simple grant of injunctive remedy "affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practices, as conditioned by the necessities of the public interest which Congress has sought to protect."); *S.E.C. v. Carriba Air, Inc.,* 681 F.2d 1318, 1322 (11th Cir. 1982) (equitable factors considered in determining whether injunction should issue pursuant to statute generally authorizing injunctive relief to prohibit violations of security laws); *United States v. Shaheen,* 445 F.2d 6 (7th Cir.1971) (writ *ne exeat republica* authorized by § 7402(a) must only be issued in extraordinary cases as dictated by common law) (Stevens, J.); *United States v. Robbins,* 235 F.Supp. 353, 357 (E.D.Ark.1964) (same). *See also,* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2942 (1973) (general discussion of equitable principles governing injunctive remedy).[11] While those factors may or may not support the eventual issuance of an injunction, they do not affect the inherent power of the district court to issue it.

■ The court's 12(b)(6) dismissal of the action against Ernst as tax adviser was, therefore, improper.[12]

*half of third parties (e.g.,* mental patients or victims of discrimination), rather than efforts by the government to protect its own interests. Here, there is an obligation on the part of the IRS to enforce the tax laws, 26 U.S.C.A. § 7402, and this injunctive action is brought in the performance of that obligation.

11. Foremost among the principles governing the use of the injunctive remedy is the traditional requirement "that courts of equity should not act … when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971); *O'Hair v. Hill,* 641 F.2d 307, 310 (5th Cir.1981). In determining whether the IRS is entitled to an injunction in this case, it will be necessary for the district court to examine the extent to which its interests are protected by available legal remedies. *See, e.g.,* 26 U.S.C.A. § 7602 *et seq.* (West 1967 & Supp.1984) (provision of summons proceeding by which IRS can obtain documents in course of tax investigation); 26 U.S.C.A. § 6701 (Supp.1984) (establishing penalty for *"any person* who aids or assists in, procures, or advises with respect to, the preparation of any portion of a return, affidavit, claim or other document in connection with any matter arising under the internal revenue laws" who knows that his advice will be used to understate tax liability) (emphasis added).

12. Ernst advances two additional arguments: (1) that the absence of discussion of § 7402(a) in the legislative history of the tax preparer provisions indicates that Congress did not believe that any such injunction was possible absent a specific statutory violation, and (2) that, by choosing only to regulate tax preparers under § 7407, Congress evidenced an intent not to regulate tax advisers. Neither argument is persuasive.

While the legislative history of the 1976 tax preparer laws contains no discussion of § 7402(a) and indicates that Congress did not consider § 7402(a) as providing a remedy against tax preparers, we note that "the views of one Congress as to the construction of a statute adopted many years before by another Congress have 'very little, if any, significance.' " *United States v. Southwestern Cable Co.,* 392 U.S. 157, 170, 88 S.Ct. 1994, 2001, 20 L.Ed.2d 1001 (1968). Moreover, discussion of § 7402(a) by the 97th Congress in passing the Tax Equity and Fiscal Responsibility Act of 1982, P.L. 97–248, demonstrates congressional awareness of the injunctive provision's breadth. The legislative history of the 1982 Act notes that § 7402 injunction is additional to the tax preparer injunction, recognizes "the great latitude inherent in [§ 7402] equity jurisdiction to fashion appropriate equitable relief," and states, citing *United States v. Landsberger,* that the district court can "enjoin any action to impede proper administration of the tax law or any action which violates criminal statutes." *See* Senate Finance Committee, Tax Equity and Fiscal Responsibility Act of 1982, S.Rep. No. 494, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Adm.News pp. 781, 1016–17.

Furthermore, Congress intended the tax preparer regulations to be cumulative. Section 7407(c) recognizes that the injunctive action

### III. ERNST AS A "TAX PREPARER"

We consider next the availability of injunctive relief as against activities that might on remand be classified as those of a tax preparer. 26 U.S.C.A. § 7407 was enacted as part of the Tax Reform Act of 1976. H.R. 10612, 94th Cong., 2d Sess. (1976), U.S.Code Cong. & Admin.News 1976, p. 2897. It, and other contemporaneous provisions regulating the activities of tax preparers, reflects congressional concern over various abuses by preparers in the reporting of clients' income tax liabilities. Staff of Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Revenue Act of 1976, p. 346 (Comm. print 1976). In addition to provisions aimed at curbing such abuses, the 1976 enactment also created various disclosure requirements aimed at providing the IRS with information about which returns have been worked on by professional preparers. *See* 26 U.S.C.A. §§ 6109(a)(4), 6695(c) (West 1980). This disclosure better enables the government to recognize and correct the practices forbidden by the Act.

In reviewing the district court's conclusion that § 7407 could not support an injunction in the present case, we will discuss (A) the remedial framework created by § 7407; and (B) the effect of Ernst's filing a § 7407(c) bond upon the action for injunction.

A. *Section 7407:* The statute outlining a specific action for injunction against tax preparers has received little judicial treatment to this date. We therefore discuss, at some length, the specific provisions of that statute.

Section 7407(a) allows the Secretary to commence a civil action in the district court "to enjoin any person who is an income tax return preparer from further engaging in any conduct described in subsection (b) or from further acting as an income tax return preparer." The section acknowledges

that district court jurisdiction is pursuant to the jurisdictional grant contained in § 7402(a) and specifically states that an action under § 7407 is "separate and apart from" any other action brought by the IRS against the preparer in question.[13]

■ Section 7407(b) sets out the general activities to be enjoined. It provides as follows:

(b) **Adjudication and decrees.**—In any action under subsection (a), if the court finds—

(1) that an income tax return preparer has—

(A) engaged in any conduct subject to penalty under section 6694 or 6695, or subject to any criminal penalty provided by this title,

(B) misrepresented his eligibility to practice before the Internal Revenue Service, or otherwise misrepresented his experience or education as an income tax return preparer,

(C) guaranteed the payment of any tax refund or the allowance of any tax credit, or

(D) engaged in any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws, and

(2) that injunctive relief is appropriate to prevent the recurrence of such conduct,

the court may enjoin such person from further engaging in such conduct. If the court finds that an income tax return preparer has continually or repeatedly engaged in any conduct described in subparagraphs (A) through (D) of this subsection and that an injunction prohibiting such conduct would not be sufficient to prevent such person's interference with the proper administration of this title,

against a tax preparer is meant to be "separate and apart from any other action brought by the United States against such income tax preparer or any taxpayer." The intent that § 7407 be just one weapon in the arsenal against tax preparer abuses does not suggest any intent to deprive

the IRS of power to regulate activities not covered by the tax preparer statutes.

**13.** Section 7407(a) also specifies venue, which is not an issue in this case.

the court may enjoin such person from acting as an income tax return preparer.

Thus, in order to issue an injunction pursuant to § 7407, three prerequisites must be met: first, the defendant must be a tax preparer; second, the conduct complained of must fall within one of the four areas of proscribed conduct, § 7407(b)(1); and third, the court must find that an injunction is "appropriate to prevent the recurrence" of the proscribed conduct, § 7407(b)(2).

■ The final section of the statute, § 7407(c), provides as follows:

No action to enjoin under subsection (b)(1)(A) shall be commenced or pursued with respect to any income tax return preparer who files and maintains, with the Secretary in the internal revenue district in which is located such preparer's legal residence or principal place of business, a bond in the sum of $50,000 as surety for the payment of penalties under section 6694 and 6695.

Thus, a preparer may block an injunctive action by filing the requisite bond, but only if the behavior sought to be enjoined is "penalty conduct" within the meaning of § 7407(b)(1)(A).

In the instant case, Ernst filed the statutory bond shortly after the initiation of the lawsuit. It claims that the IRS complaint essentially alleges penalty conduct and that the bond therefore terminates any right to injunction under § 7407. We now examine that contention.

B. *The Effect of Ernst's § 7407(c) Bond:* In its complaint, the IRS sought injunctive relief against various activities.[14] The question before the court is which, if any, of the activities are penalty conduct as defined by 26 U.S.C.A. §§ 6694–5, such that Ernst's bond prevents the court from enjoining that conduct under § 7407.

Section 6694 sets forth two kinds of penalty conduct.

(a) **Negligent or intentional disregard of rules and regulations.**—If any part of any understatement of liability with respect to any return or claim for refund is due to the negligent or intentional disregard of rules and regulations by any person who is an income tax return preparer with respect to such return or claim, such person shall pay a penalty of $100 with respect to such return or claim.

(b) **Willful understatement of liability.**—If any part of any understatement of liability with respect to any return or claim for refund is due to a willful attempt in any manner to understate the liability for a tax by a person who is an income tax return preparer with respect to such return or claim, such person shall pay a penalty of $500 with respect to such return or claim. With respect to any return or claim, the amount of the penalty payable by any person by reason of this subsection shall be reduced by the amount of the penalty paid by such person by reason of subsection (a).

Section 6695 defines as penalty conduct various violations of the disclosure and record-keeping provisions of the statute.

Ernst argues that the complaint alleges a pattern of activity designed to understate tax liability. Encouraging clients to take unwarranted investment tax credits would amount to a "willful understatement" and thus apparently fits within the category of activity for which the filing of a $50,000 bond will block injunctive action. In support of its argument, Ernst notes that the IRS is bringing penalty actions under § 6694 against it in cases in which audits have uncovered the bogus terminology.

The IRS argues, with some subtlety, that the conduct alleged is not simply penalty conduct. While the government does not dispute that it is proceeding against Ernst under § 6694 for some returns, it characterizes the complaint as alleging a broad

---

**14.** As explained in the statement of facts, the IRS seeks to enjoin Ernst from promoting its investment tax credit service, advising clients to use deceptive terminology to make improper claims, and creating false documentation to support those claims. The IRS also sought to enjoin Ernst from hindering its efforts to discover which taxpayers used the tax credit service. This issue has been litigated separately. *See supra* note 2.

pattern of deception and falsification that is actually proscribed by § 7407(b)(1)(D) ("any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue Laws"). Since the bond bars injunctive relief only with respect to subsection (A) penalty conduct and not with respect to subsection (D) conduct, the IRS seeks to avoid the bar in this manner. The IRS describes its concern that numerous undiscovered returns may evade scrutiny because of their misleading terminology. Thus, because the gist of the complaint is falsification and deception rather than understatement, the IRS contends that the filing of bond does not block the request for injunctive relief.

The district court, ruling for Ernst, found that "all the activities charges ultimately have the same goal, the understatement of tax liability." 549 F.Supp. at 1308. It rejected the government's argument as an awkward attempt to divide up activity that, considered as a whole, clearly is subject to the bonding provision.

We find the district court's decision generally correct. However, unlike the court below or the parties on appeal, we do not believe that the issue is appropriately considered as an "all or nothing" proposition. Rather, within the context of a complicated complaint and request for injunctive relief against various activities, we find the bonding provision applicable to some, but not necessarily all, of the activities alleged in this action. We examine each type of conduct in the complaint to determine whether it is penalty conduct.

■ 1. The IRS requests an injunction against Ernst's advising clients to make unjustified tax credit claims by means of deceptive terminology. The district court correctly ruled that this activity is so linked to the goal of understating tax liability that it must necessarily fall within § 6694 penalty conduct.

15. The IRS believes that the kind of deception

The legislative history of § 6694 gives examples of "willful understatements" that support the district court's decision.

For example, if a taxpayer states to the return preparer that he has only two dependents, and the preparer, with full knowledge of that statement, reports six dependents on the tax return, a willful attempt to understate tax liability has occurred. A willful attempt also occurs generally where an income tax return preparer disregards certain items of income given to him by the taxpayer or other persons.... A willful understatement of tax liability can also include an intentional disregard of rules and regulations. For example, an income tax return preparer who deducts all of a taxpayer's medical expenses, intentionally disregarding the percent of adjusted gross income limitation, may have both intentionally disregarded rules and regulations and willfully understated tax liability.

Staff of Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Revenue Act of 1976, p. 352 (Comm. print 1976) U.S.Code Cong. & Admin.News 1976, pp. 2897, 3248. These examples deal with falsehoods knowingly perpetrated by a return preparer—false factual information (number of dependents; reported income) or false legal claims (entitlement to full medical deduction)—to reduce a client's tax liability. While we can perceive some difference in a situation where terminology is manipulated to support an improper claim, that difference is not significant enough to justify a conclusion that Ernst's alleged activities in advising clients is other than "willful understatement." Referring to a door (non-qualified property) as a "movable partition" is much like claiming six dependents instead of two. Claiming an investment tax credit on property which is ineligible is similar to claiming a full medical deduction when the governing law only allows a partial claim. The type of falsehoods and deceptions alleged by the IRS in this case are within the realm of "willful understatement" proscribed by 26 U.S.C.A. § 6694(b).[15]

alleged is significantly different because Ernst

2. Having decided that advising clients how to make deceptive claims for investment tax credits would be penalty conduct for which the § 7407(c) bond would bar injunctive relief, we also conclude that misleading documentation created by Ernst in the course of that advising is, similarly, too closely related to the "willful understatement" to be separated out and enjoined. Within the scheme created by § 7407, such activity is also penalty conduct.[16]

3. While the IRS request for injunction to stop such penalty conduct cannot be enjoined under § 7407 because of the bond filing, the IRS has also requested an injunction to stop Ernst from promoting and marketing its allegedly fraudulent investment tax credit service. The facts alleged by the IRS may, if proved, entitle it to an injunction of such activity.

In promoting its service, Ernst approaches parties who have property subject to some legitimate investment tax credit. It apparently gives those parties advertising material suggesting that it can help them claim more of a credit than that allowed under "traditional methods" of claiming property. The IRS, of course, argues that the new method actually utilized is fraudulent.

Section 7407(b)(1)(C) allows the court to enjoin return preparers who "guarantee the payment of any tax credit." Many taxpayers are, of course, legitimately entitled to refunds and credits. The particular provision, however, recognizes that certain promotional schemes may facilitate fraudulent preparation of taxpayer returns. For

attempts to cover up the understatement via use of misleading terms, thereby rendering the understatements more difficult to discover. We would be reluctant to draw a line between two types of willful understatement based upon how ingenious the perpetrator is in trying to get away with his deception. Furthermore, Congress did foresee that activities violating § 6694(b) might be fraudulent in such a manner as to thwart IRS detection. Unlike violations of § 6694(a) (negligent understatements), which have a three-year statute of limitations, there is *no* statute of limitations for prosecuting violations of § 6694(b). 26 U.S.C.A. § 6696(d) (Supp.1983). The existence of alternate means by which the IRS can discover whether taxpayers have used the complained of service, *see* 26 U.S.C.A. §§ 7602, 7609, minimizes any fear that bogus claims will avoid governmental scrutiny.

The IRS further argues that this result, essentially accepting the district court's ruling that the "ultimate goal" of the alleged deception is understatement, would render meaningless the language of § 7407(b)(1)(D), because no "other fraudulent or deceptive conduct" could be imagined that did not have the ultimate goal of reducing taxes. This is an inaccurate reading of the statute. For example, both ¶¶ (B) and (C) of the statute allow injunctions against particular conduct by tax preparers which may or may not be related to countenancing understatement of tax liability. Misrepresenting one's education or experience, proscribed in ¶ (B), or guaranteeing a tax refund or credit to a client, proscribed in ¶ (C), may be enjoined whether or not reducing taxes is shown as the motive. These provisions demonstrate that the return preparer statutes are concerned with regulating preparer activities vis a vis their clients as well as protecting the public fisc. Therefore, even given a broad definition of "penalty conduct" under § 7407(b)(1)(A), the general category of activity proscribed in (D) retains independent validity by forbidding activity akin to that proscribed by (B) and (C) as illustrated by the text below. *See also* Staff of Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Revenue Act of 1976, p. 355 (Comm. print. 1976) U.S.Code Cong. & Admin.News 1976, pp. 2897, 3251 (describing activities proscribed by (D) as "similar in nature to the above types of conduct").

16. The fact that a § 7407 injunction is not available as against certain activities by reason of the bond filing does not indicate a complete lack of remedies for such behavior. The IRS has the ability to seek taxpayer records from Ernst, 26 U.S.C.A. §§ 7602, 7609, compel disclosure, 26 U.S.C.A. § 7604, and ultimately assess penalties against Ernst for preparing improper returns. 26 U.S.C.A. §§ 6694-5. In addition, criminal penalties are available against any party who assists in the preparation of a false or fraudulent tax return. 26 U.S.C.A. § 7206 (1967). Finally, a statute recently enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 authorizes significant *civil* penalties against any person (including tax preparers) assisting in the preparation of a false or fraudulent tax claim. 26 U.S.C.A. § 6701. These penalties may be imposed in lieu of the less onerous tax preparer penalties, 26 U.S.C.A. § 6701(f)(2). Unlike the tax preparer statutes, the new enactment does not provide a bonding provision as a shield against injunctive relief. Our notation of the foregoing alternative remedies, of course, expresses no opinion with respect to the manner or scope of their application.

this reason, injunctive relief is appropriate.[17]

There is no direct allegation here that Ernst "guaranteed" clients a specific level of tax credit. However, the facts alleged do suggest the possibility that the illegal scheme was aggressively marketed to taxpayers by discussing the potential savings over "traditional methods" of tax accounting. If this aggressive marketing scheme was coupled with Ernst's knowledge that the claims to be made were improper, the situation would be little different than a preparer promising potential clients a tax refund. While such activity would not fall neatly within § 7407(b)(1)(C), it could properly be enjoined under the general language of § 7407(b)(1)(D).

We do not here indicate any opinion as to whether such an injunction is warranted against Ernst's promotional activities. The complaint, however, alleges a pattern of activity which, if proven, could support partial injunctive relief under (D) despite Ernst's filing of bond. It was therefore error for the district court to conclude that the bond raised an "insuperable bar" to the injunction against Ernst as a tax preparer. 549 F.Supp. at 1309. While that bar does preclude a § 7407 injunction against advising clients or creating documentation in the course of such advice, improper promotional activities may still be enjoined.

### IV. CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of this action. To the extent that Ernst is found on remand to be a tax adviser, the district court has power under 26 U.S.C.A. § 7402(a) to enjoin conduct by it which hinders the enforcement of the Internal Revenue laws. Such power must be exercised in light of the traditional principles governing the use of the equitable remedy. On the other hand, to the extent that Ernst is a tax preparer, the filing of a § 7407(c) bond does bar injunctive relief against any penalty conduct. However, Ernst's promotion of its investment tax credit service may be enjoined under § 7407(b)(1)(D) if the IRS allegations prove true and the showing required by § 7407 is made.

REVERSED and REMANDED.

---

17. Injunction is appropriate even though an ultimate concern with "preparer guarantees" is the possible understatement of tax liability. Unlike activities incident to the preparation of particular returns, however (*e.g.,* advising clients or creating false documentation), the improper promotional techniques are deemed separate from penalty conduct, as regulated by § 6694, and thus can be enjoined regardless of whether a preparer files bond. This reflects a congressional judgment that such activities are to be stopped regardless of the possibility that resulting tax returns may later be subject to penalty proceedings.