# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 05-4433

LAKEVIEW TECHNOLOGY, INC.,

*Plaintiff-Appellant*,

*v.*

ERIC ROBINSON,

*Defendant-Appellee*.

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 3227—**Charles P. Kocoras**, *Chief Judge*.

---

ARGUED APRIL 3, 2006—DECIDED MAY 1, 2006

---

Before EASTERBROOK, ROVNER, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Eric Robinson was a vice president of sales of Lakeview Technology, a vendor of software that enables users to access their data during system outages. Late in 2004 Robinson entered negotiations with Vision Solutions, Inc., one of Lakeview's competitors; he did not inform Lakeview about this step, nor did he inform his employer when he accepted Vision's offer of employment. He told Lakeview that he would be leaving but lied about the reason. Asked point-blank about rumors that he was going to Vision, Robinson told Lakeview that he was doing no such thing and would instead pursue real-estate interests after his departure. By deceiving his employer,

Robinson not only extended the duration of his salary but also obtained commercially valuable information that he could take with him. During April and May 2005, Lakeview made its selling plans for the 2005-06 sales year; Robinson took this information with him to Vision in the middle of May 2005. When Lakeview learned that it had been gulled, it filed this suit under the diversity jurisdiction.

Robinson had promised Lakeview, through his employment contract, that for a year following his departure he would not compete with it by soliciting any of Lakeview's customers with which he had contact or any prospective customer to which Lakeview had attempted to sell software during the preceding 24 months. He also promised to hold in confidence all of Lakeview's trade secrets, including its plans, pricing, and customer lists. Lakeview asked for an injunction to ensure that Robinson kept these promises. After Robinson told the district judge that he would limit his efforts to places in which Lakeview had not been promoting its software and would not solicit his old customers or let Vision in on any of Lakeview's secrets, the court denied Lakeview's motion for a preliminary injunction—without holding an evidentiary hearing to explore the question whether Robinson is telling the truth. Lakeview took an interlocutory appeal under 28 U.S.C. §1292(a)(1). Discovery continues in the district court, and the district judge has yet to set a schedule for dispositive motions. So preliminary relief may be the only kind available for some time to come. The dispute is not moot: the limit on using trade secrets is of indefinite duration, and the limit on solicitation is extended if not complied with during the year provided by the contract.

The district court gave three reasons for denying relief: (1) The absence of proof that Robinson had solicited Lakeview's customers or disclosed its secrets; (2) Robinson's pledge not to do so in the future; and (3) the prospect of hefty damages if he should act otherwise. The first of these

is inadequate as a matter of Illinois law, which controls here. That subject is covered in *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630 (7th Cir. 2005), and the discussion need not be repeated. Injunctions issue to curtail palpable risks of future injury; it is not essential to establish that the worst has come to pass.

The second reason is weak given Robinson's history of deceit. Whether an ex-employee who concedes telling lies that serve his financial interest is continuing to dissemble, as Lakeview contends, is a question that a court may not resolve against the employer without a hearing. See, e.g., *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997); *Medeco Security Locks, Inc. v. Swiderek*, 680 F.2d 37, 39 (7th Cir. 1981). Especially when his lawyer contends (as Robinson's does) that he is *entitled* to ignore his commitments, which at oral argument counsel called onerous. This implies a strong temptation to disregard the contractual promises coupled with a belief that doing so would be justified. The risk that action will follow cannot be called insubstantial.

The court's final reason fails to take account of the limits on Robinson's wealth. The judge wrote that, if Robinson fails to honor his contractual obligations, "the damage could be very large, given the nature of the industry involved and the length of the revenue-generating relationship with customers" but could be calculated, so that a financial remedy would be adequate. Ability to *calculate* damages does not make that remedy adequate, however, if the plaintiff cannot *collect* the award. A judgment-proof defendant is not deterred by the threat of money damages, so some other remedy (such as the contempt power) may be essential. Nothing in the record suggests that Robinson would be good for "very large" damages. He could provide assurances via a bond or a letter of credit—and if Vision is confident that it has in place controls to prevent Robinson from violating his promises to Lakeview, then

Vision should be willing to pledge its credit to induce a commercial surety to stand behind Robinson's obligation. But neither Robinson nor Vision (which is not a party, and which therefore cannot be ordered to pay from corporate funds) has offered to provide the sureties that would make damages a potentially adequate remedy for the potentially "very large" injuries that Robinson can inflict on Lakeview.

The balance of equities is so lopsided that Lakeview is entitled to injunctive relief, unless Robinson demonstrates that any judgment against him can be satisfied. If, as Robinson assured the district court, he plans to abide by all of his commitments, then an injunction that obliges him to keep these promises while allowing him to remain on Vision's payroll costs him nothing: the costs of false positives are nil. (Any slight risk can and should be ameliorated by an injunction bond under Fed. R. Civ. P. 65(c). See *Mead Johnson & Co. v. Abbott Laboratories*, 201 F.3d 883, amended, 209 F.3d 1032 (7th Cir. 2000).) But an injunction can protect Lakeview from potentially substantial injury if Robinson should yield to temptation: the costs of false negatives are large. See generally *Illinois Bell Telephone Co. v. WorldCom Technologies, Inc.*, 157 F.3d 500, 503-04 (7th Cir. 1998); *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593-94 (7th Cir. 1986); *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433-34 (7th Cir. 1986).

Whether a bond or other surety would be a sufficient reason to withhold injunctive relief is a question best left to the district court. See *Wolfinger v. Mueller*, 165 F.2d 844 (6th Cir. 1948). Our suggestion that financial security could be an adequate substitute for an injunction should not be confused with the proposition, rejected in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), that a district court always may require defendants to put up assets. Here the plaintiff is presumptively

entitled to equitable relief under the traditional formula that considers both the probability of success on the merits and the potential costs of judicial error. When the evaluation of relative error costs depends in large measure on the fact that the defendant may be unable to pay damages, this balance changes if a bond or letter of credit ensures that the prevailing side can be compensated adequately. A "non-injunction bond" then is the flip side of an injunction bond under Rule 65(c). Cf. 7-20 *Chisum on Patents* §20.04[1][g]. Until this issue has been resolved one way or the other, however, Lakeview is entitled to a preliminary injunction that will reduce the risks it must bear from uncertainty about Robinson's conduct. This is not to say, however, that Lakeview is entitled to its fondest wish—that Robinson be banned from working for any competitor. Sweeping relief is inappropriate if more focused restrictions will serve.

The judgment of the district court is vacated, and the case is remanded with instructions to craft appropriate equitable relief with dispatch. The mandate will issue forthwith.

A true Copy:

      Teste:

                                                          _____

                                      *Clerk of the United States Court of*
                                          *Appeals for the Seventh Circuit*