[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11434
_____

D.C. Docket No. 8:17-cv-00092-JDW-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ASKINS & MILLER ORTHOPAEDICS, P.A.,
ROLAND V. ASKINS, III,
PHILIP H. ASKINS,

Defendants-Appellees.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(May 23, 2019)

Before MARCUS, GRANT, and HULL, Circuit Judges.

GRANT, Circuit Judge:

The IRS says it needs a preliminary injunction against Askins & Miller

Orthopaedics—a serial employment-tax delinquent—to ensure that it gets its due

as taxes continue to pile up.  It could just wait for nonpayment and later seek a

money judgment, but if past is prologue, the money will be long gone before the IRS can collect. Given the alternative of a valid but potentially useless action for damages, does the IRS necessarily have an "adequate" remedy at law that puts an injunction out of the question? We conclude that it does not, so we vacate the district court's order denying injunctive relief and remand for further proceedings.

I.

The facts in this case tell a cyclical and monotonous story about the IRS's years-long battle against two brothers, but the long and short of it is this: Askins & Miller Orthopaedics habitually fails to pay its federal employment taxes, and the government seeks injunctive relief to make sure it gets paid going forward.

Askins & Miller is a Sarasota medical practice run by brothers Philip H. Askins and Roland V. Askins III. As an employer, Askins & Miller is required under the tax laws to 1) withhold from its employees' wages and pay over to the IRS federal income and Federal Insurance Contributions Act (FICA) taxes, and 2) pay its own FICA taxes. These payments must be deposited in an appropriate federal depository bank. But since 2010, Askins & Miller has repeatedly failed to pay these taxes—both its own share of FICA taxes and the income and FICA taxes it has withheld from its employees—to the IRS. Askins & Miller does not dispute its tax liability; indeed, it has filed returns documenting it. It just fails, over and over again, to pay.

The IRS has tried several collection strategies over the years. It started with an effort to achieve voluntary compliance: IRS representatives have spoken with the Askins brothers "at least 34 times" since December 2010, including 27 in-

2

person meetings. Twice they entered into installment agreements that set up monthly payments to bring Askins & Miller back into compliance, but the company defaulted both times. Two other times, they warned Askins & Miller that continued noncompliance could prompt the government to seek an injunction.

The IRS has employed more aggressive means as well. It served levies on "approximately two dozen entities," but most "responded by indicating that there were no funds available to satisfy the levies." Three entities paid some money, but not nearly enough to satisfy Askins & Miller's debts or to keep pace with its accrual of new liabilities. Additionally, the IRS's ability to collect payments through levies has been hampered by the defendants' attempts to hide Askins & Miller's funds and to keep the balances in Askins & Miller's accounts low. Between 2014 and 2016, the Askins brothers transferred money from Askins & Miller to "RVA Trust," which operates a private hunting club for the brothers, and "RVA Investments," an accounting business associated with their father. The IRS also discovered additional accounts at BankUnited and Stonegate Bank. It did not seek to levy RVA Trust, RVA Investments, or the bank accounts because it discovered them after this case had been referred to the Department of Justice and because the IRS believed that "there is a substantial risk that any new levy would result in [the defendants] opening new undisclosed accounts and moving the money there."

Next up were the brothers' personal assets: because the brothers ran Askins & Miller and were responsible for its failure to pay the taxes, the IRS "assessed trust fund recovery penalties against Roland V. Askins III for tax periods in 2014–

3

2016 and against Philip Askins for tax periods in 2009–2012 and 2014–2016." Trust fund recovery penalties allow the IRS to hold a company's officers personally liable for the taxes withheld from employees' wages—which belong to the government and are merely held in trust by the company—when those officers willfully fail to remit the employees' taxes to the IRS. The IRS issued levies to "approximately 15 entities" associated with Roland, but only one entity made any payments; that source was enough "to satisfy current trust fund recovery penalties assessments [sic] against Roland," but not enough "to keep pace with the rate at which the company" continued to accrue liabilities. The IRS levied "approximately six entities" for Philip, but after one paid less than $2,000, Philip closed the account. The IRS does not believe the brothers have enough assets in their own names to cover the debts, and even if they did, trust fund recovery penalties cannot be used to cover Askins & Miller's share of its own employment taxes (as distinct from employees' taxes that were withheld from their paychecks).

The IRS "consistently" filed notices of federal tax liens, but this approach was a nonstarter: liens "are only valuable insofar as a taxpayer has property against which the liens can be enforced," and Askins & Miller "does not own any substantial property." For the same reason, the IRS considered but decided not to pursue asset seizure: the most promising target, a 2004 Cadillac worth $10,000, was apparently not worth the effort.

Feeling as if it had reached the end of its rope, the IRS sued Askins & Miller and both brothers in 2017. It asserted two counts: one for permanent injunctive relief requiring Askins & Miller and the brothers to take specific steps to ensure

4

that future payments would be made before the brothers could divert the money, and another for damages to account for outstanding liabilities between 2010 and 2015.  Relying on a declaration from one of its revenue officers, the IRS asked the district court to issue a preliminary injunction—largely mirroring the permanent injunction that it sought in its complaint—designed to prevent Askins & Miller from incurring further tax liabilities while the litigation was still ongoing.  But the district court denied the motion without prejudice because it found the declaration conclusory, and because it thought the proposed injunction was "effectively an 'obey-the-law' injunction."

Trying again, the IRS submitted a more detailed declaration and additional argument as to why the court should issue a preliminary injunction.  It contended that the proposed injunction was not an "obey-the-law" one and that it lacked an adequate remedy at law because all of its previous collection efforts had proven unsuccessful.  The IRS also argued that because the company appeared to be judgment-proof, the money judgment it sought for past liabilities was likely meaningless.  But again, the court declined: although the court found that three of the four factors for granting injunctive relief were "not seriously disputed," it denied an injunction because it concluded that the availability of an action for damages was an adequate remedy at law and that the IRS therefore could not show irreparable harm.  The court also suggested that the injunction, at least as drafted and proposed by the IRS,[1] was still, effectively, a disfavored "obey-the-law"

---

[1] The proposed injunction included seven terms:

5

injunction.  The IRS appealed.  *See* 28 U.S.C. § 1292(a)(1) (allowing for interlocutory appeal of orders denying an injunction).  Since then, the district court has granted summary judgment to the IRS on count two (the damages claim for taxes between 2010 and 2015), but it deferred ruling on count one (the request for a permanent injunction) because it concluded that the IRS's appeal divested it of jurisdiction over that count.[2]

---

(1) Defendants shall, for liabilities due on each employment tax return required to be filed after the date of the preliminary injunction, pay over to the IRS all income and Federal Insurance Contributions Act ("FICA") taxes withheld from employees and Askins & Miller's own share of FICA taxes (collectively, "employment taxes");

(2) Defendants shall segregate (*i.e.*, hold separate and apart from all other funds) all employment taxes of employees of Askins & Miller and shall, on a semiweekly schedule, deposit them in an appropriate federal depository bank;

(3) Defendants shall not transfer any money or property to any other entity—except a payroll processing company that is shown a copy of the injunction and is approved in advance by Revenue Officer Richard Paulsen (or another employee designated by the IRS)—to have that entity pay the salaries or wages of Askins & Miller's employees. If Defendants employ an approved payroll processing company, all transfers shall include sufficient funds for the payroll processing company to make Askins & Miller's federal tax deposits, and Defendants shall provide the payroll processing company with the authority and information necessary to make such deposits;

(4) Except for use of a payroll processing company in accordance with paragraph three above, Defendants shall not assign any of Askins & Miller's property or rights to Askins & Miller's property or make any disbursements from Askins & Miller's accounts before making all required deposits and paying all required outstanding liabilities due on each employment tax return required to be filed after the date of the preliminary injunction;

(5) Defendants shall sign and deliver affidavits to the IRS at 5971 Cattleridge Boulevard, Suite 102-Mail Stop 5410, Sarasota, FL 34232, or to such other specific location as directed by the IRS, within two banking days after each employment tax deposit is due, stating that the requisite deposit was timely made;

(6) Defendant Roland V. Askins III shall notify the IRS of any new company or business he may come to own or manage; and

(7) Defendant Philip H. Askins shall notify the IRS of any new company or business he may come to own or manage.

[2] The brothers did not materially dispute the IRS's account of the facts before the district court, nor do they do so on appeal.  They did (and do), however, contest the IRS's characterizations of

Meanwhile, the defendants' delinquency continued: Askins & Miller racked up more liabilities in 2017 even after the IRS sued, and the district court found that the defendants have "a proclivity for unlawful conduct" and are "likely to continue ignoring" their tax obligations.  In fact, other businesses associated with the brothers—RVA Trust and Gulfcoast Surgery Center—*also* fell behind on their employment taxes.  The IRS represented to the district court that Askins & Miller was "accumulating new employment tax liabilities faster than the IRS's ability to collect the outstanding obligations" and that its time spent playing cat-and-mouse over the years "constituted a substantial drain" on resources.  Deeming an action for damages a Sisyphean task in these circumstances, the IRS contends on appeal that the district court should have granted a preliminary injunction because the IRS has no "adequate" remedy at law.

## II.

Section 7402(a) of the Internal Revenue Code grants federal district courts an array of powers to aid in enforcing the tax laws:

---

their motivations and intent: in the brothers' telling, it was bad business, not bad faith, that caused them to fall behind.  Specifically, Philip Askins submitted a declaration to the district court stating that Askins & Miller did not make "any decision never to pay withholding taxes," that Askins & Miller has "consistently reported all of its tax liabilities," and that "extreme financial reversals and financial hardships" caused the business to fall behind on *all* of its debts.  Philip also claimed that Askins & Miller never "sought to hide or avoid it's [sic] liabilities either to the IRS or to any of its other creditors" and that he had been truthful and open with the IRS.  Finally, Philip claimed that a potential sale of another entity, Gulfcoast Surgery Center, was supposed to provide the funds to bring Askins & Miller into compliance with all of its tax obligations, but the sale "unexpectedly" fell through.  The district court did not explicitly resolve these disputes in its order denying the government's motion for a preliminary injunction, but it did find that "the record demonstrates that Defendants have diverted and misappropriated" the employment taxes withheld from their employees' wages.

7

> The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica*, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

26 U.S.C. § 7402(a). In analyzing this grant of injunctive power, we have said that the "decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the district court's use of the equitable remedy." *United States v. Ernst & Whinney*, 735 F.2d 1296, 1301 (11th Cir. 1984).[3] To obtain a preliminary injunction under "the traditional factors," the IRS must demonstrate 1) a substantial likelihood of success on the merits, 2) that it will suffer irreparable injury unless the injunction is issued, 3) that the threatened injury to the IRS outweighs whatever harm the proposed injunction might cause the defendants, and

---

[3] We note that there is some question over whether applying "the traditional factors" in § 7402(a) cases is the right approach. The statute's "in addition to and not exclusive of" language could be read to suggest that the government need not show the lack of an adequate remedy at law, as would normally be required under the traditional factors. *See, e.g.*, *United States v. Benson*, 561 F.3d 718, 727 n.4 (7th Cir. 2009); *cf. United States v. First Nat'l City Bank*, 379 U.S. 378, 383 (1965) ("[O]ur review of the injunction as an exercise of the equity power granted by 26 U.S.C. § 7402(a) must be in light of the public interest involved: 'Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved.'" (citation omitted)). But the IRS does not ask us to hold categorically that the adequate-remedy-at-law requirement is inapplicable in § 7402(a) cases, and at any rate we are bound by our precedent. *See Ernst & Whinney*, 735 F.2d at 1301; *see also United States v. Cruz*, 611 F.3d 880, 887 (11th Cir. 2010) (rejecting argument that courts should disregard equitable factors when issuing injunctions under § 7407 and citing *Ernst & Whinney*); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098–99 (11th Cir. 2004) (recognizing some "statutory injunction" contexts where the traditional requirements are relaxed, but citing *Ernst & Whinney* for the proposition that "several of our cases also suggest that, when Congress authorizes injunctive relief, it implicitly requires that the traditional requirements for an injunction be met in addition to any elements explicitly specified in the statute").

8

4) that the injunction would not be adverse to the public interest. *See Keeton v. Anderson-Wiley*, 664 F.3d 865, 868 (11th Cir. 2011). We review for abuse of discretion a district court's "ultimate decision of whether to grant a preliminary injunction," but we review de novo "determinations of law made by the district court en route" to that decision. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Landstar Sys., Inc.*, 622 F.3d 1307, 1323 (11th Cir. 2010) (internal quotation marks and citation omitted).

### III.

Before reaching the merits, we face a preliminary question: whether subsequent events have rendered this case (or at least portions of this case) moot. During the briefing, counsel for defendants filed a motion to withdraw because he was not getting paid. In that motion, counsel asserted that Askins & Miller "is no longer in business, has no employees, and has insufficient assets to ever resume business in the future." The first five of the seven items in the proposed preliminary injunction are premised on Askins & Miller's continued viability. Although counsel withdrew the motion after the Askins brothers "made satisfactory financial arrangements," we asked the parties to address whether Askins & Miller is "still incurring tax liabilities that the proposed preliminary injunction would address" and how the answer to that question should affect our disposition of the case.

"Whether a case is moot is a question of law that we review de novo." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1182 (11th Cir. 2007). A "case is moot when it no longer presents a live controversy with respect to which

9

the court can give meaningful relief." *Id.* at 1183 (quoting *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1282 (11th Cir. 2004)).  But an "important exception" to this "general rule" exists in cases of "voluntary cessation"—that is, where a defendant voluntarily puts an end to his offensive conduct. *Id.*  In such cases, it is "well settled" that the defendant's voluntary cessation does not automatically moot the case; rather, a case "might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks and citation omitted).  This "stringent" standard imposes a "heavy" and "formidable" burden on the party asserting mootness—here, the Askins brothers. *Id.* at 189–90.  To carry this "heavy" burden, we require more than a private party's assertion that its challenged conduct will not recur. *See Sheely*, 505 F.3d at 1184.

Based on the undisputed factual record, Askins & Miller's possible closure did not moot the IRS's claim for injunctive relief.  The Supreme Court has made clear that the voluntary cessation standard applies where a business entity's closure is alleged to have mooted the case. *See Laidlaw*, 528 U.S. at 193.  In conducting the voluntary cessation analysis, we have previously identified "at least" three relevant factors: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Sheely*, 505 F.3d at 1184.  Applying those factors here—

10

in light of the history of the case and the undisputed conduct of the defendants—we find it far from "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189 (internal quotation marks and citation omitted).

*First*, we consider "whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice." *Sheely*, 505 F.3d at 1184. The defendants' failure to pay their federal employment taxes has been "a continuing and deliberate practice" for the better part of a decade. Far from "isolated or unintentional," the defendants' routine failure to pay their employment taxes since 2010—despite withholding the money from their employees, and despite repeated interventions from the IRS—appears to have been their method of doing business. And although the defendants attribute that routine failure to bad business rather than bad faith, their professed intentions wane in the shadow of their undisputed history. Similarly, considering the record, we put little weight on Askins & Miller's (unsupported) eleventh-hour assurances that the business is gone for good. Indeed, we have repeatedly said that a "defendant's assertion that it has no intention of reinstating the challenged practice 'does not suffice to make a case moot' and is but 'one of the factors to be considered in determining the appropriateness of granting an injunction against the now-discontinued acts.'" *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629,

11

633 (1953)).  And, again, we require more than a private party's unsupported assertions—especially here, given the history of this case.

*Second*, we ask "whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit." *Id.*  Here, the timing of Askins & Miller's possible closure is more indicative of a changed tax-avoidance strategy than a changed heart.  We have previously expressed skepticism where changed circumstances come on the eve of a significant decision point in litigation.  *See id.* at 1187 n.13 (defendant applied "new policy" shortly before summary judgment motion); *see also id.* at 1186 (collecting cases).  Here, Askins & Miller claims to have closed down while this case was on appeal. Significantly, the undisputed facts in the record demonstrate that it would be simple to reopen at a moment's notice: back in November 2015, while the IRS was still experimenting with different collection strategies, "the company submitted a financial statement" reflecting "no investments, no accounts or notes receivable, no real estate, and no business equipment."  Despite that lack of assets, the company continued in business until at least mid-2018.  The record further demonstrates the defendants' history of moving money around from entity to entity.  Even taking the defendants at their word, one of the brothers "has continued his practice incorporated as Roland V. Askins, III, M.D., P.A.," and their attorney represented at oral argument that although Askins & Miller is out of business "as a practical matter" (whatever that may mean), the corporation "continues to exist" and "hasn't been formally dissolved."  Those admissions only underscore the ease with which the brothers could revive Askins & Miller.  In light of the record evidence, the

12

defendants' claim that they have "insufficient assets to ever resume business in the future" rings hollow.

*Third*, we look to "whether, in ceasing the conduct, the defendant has acknowledged liability." *Id.* at 1184. Although the defendants here have not disputed their *past* tax debt—the district court entered a money damages judgment for past-due employment taxes, and Askins & Miller filed tax returns admitting its liabilities—that is cold comfort given the history of this case, in which Askins & Miller has demonstrated a pattern of admitting liability but refusing to pay. The IRS's proposed relief is designed to prevent Askins & Miller from dodging its admitted tax liabilities going forward. Because the record amply demonstrates a pattern of Askins & Miller pairing its admitted liability with a refusal to pay, the fact that it still admits its liability does not convince us that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 189 (internal quotation marks and citation omitted).

Given the undisputed facts before us, we do not believe that the defendants can satisfy their "heavy" and "formidable" burden of making it "absolutely clear" that their behavior will not recur. And "we are unpersuaded that a remand would further the expeditious resolution of the matter." *Sheely*, 505 F.3d at 1188 n.15 (conducting mootness analysis without remanding for further fact finding). The district court already concluded that the defendants have "a proclivity for unlawful conduct" and are "likely to continue ignoring" their tax obligations. The record demonstrates a near-decade-long saga in which the IRS has pursued Askins & Miller time and again. Over that time span, the defendants have funneled money

to new accounts and entities as the IRS closed in on the old ones.  For at least the time between November 2015 and mid-2018, Askins & Miller continued as a going concern despite reporting "no investments, no accounts or notes receivable, no real estate, and no business equipment."  Against that backdrop—and in light of the defendants' admissions that Askins & Miller "continues to exist" and that one of the brothers continues to practice medicine—"we can discern no reason for sending the question of mootness back to the district court for further review or fact finding."  *Id.*

We emphasize that our decision that the case is not moot does not resolve whether Askins & Miller's possible closure makes injunctive relief inappropriate on the merits.  That is due to the differences between the standard for mootness due to voluntary cessation and the standard for granting injunctive relief.  For a case to be moot under the voluntary cessation doctrine, the party asserting mootness—here, the defendants—bears the burden to convince a court that "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."  *Laidlaw*, 528 U.S. at 189 (internal quotation marks and citation omitted).  By contrast, to obtain an injunction, the *plaintiff* must "establish by a preponderance of the evidence that this form of equitable relief is necessary."  *Sheely*, 505 F.3d at 1182 n.10.  Because "the two inquiries are strikingly different"—both as to who bears the burden and as to what that burden is—it follows that "[e]ven though a case is not moot, that does not mean that injunctive relief follows automatically."  *Id.*  The analyses may "overlap[]" because "both are concerned with the likelihood of future unlawful

14

conduct," but as we have explained, the answers may well turn out to be different. *Id.* Our analysis here answers the mootness question, but we leave it to the district court on remand to answer the merits question.

IV.

Assured of our jurisdiction, we turn to the merits. We conclude that neither the adequate-remedy-at-law requirement nor Rule 65(d) should have precluded injunctive relief on the facts here.

### A. *Adequate Remedy at Law*

The district court determined that three out of the four "traditional factors" governing the propriety of injunctive relief—likelihood of success on the merits, the balance of harms, and the public interest—were "not seriously disputed by Defendants." But it denied injunctive relief because it concluded that the IRS had an adequate remedy at law: a suit for money damages after Askins & Miller failed to pay its taxes. We disagree. On these facts, the IRS's ability to sit on its hands until the defendants fail to pay their taxes (again) and only then bring an action for money damages does not qualify as an "adequate" legal remedy.

Our prior cases do not answer the question presented here. We have said before that § 7402(a)'s language "encompasses a broad range of powers necessary to compel compliance with the tax laws." *Ernst & Whinney*, 735 F.2d at 1300. And we have also emphasized that in any given case under § 7402(a) a court must look to "the traditional factors shaping the district court's use of the equitable remedy," and that "[f]oremost among the principles governing the use of the injunctive remedy is the traditional requirement 'that courts of equity should not

15

act . . . when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'" *Id.* at 1301 & n.11 (quoting *Younger v. Harris*, 401 U.S. 37, 43–44 (1971)). We left it to the district court in that case to "examine the extent to which [the IRS's] interests are protected by available legal remedies." *Id.* And our past precedents on adequate legal remedies do not squarely resolve the issue in this case: whether the collectability of a future money judgment to cure an expected future injury matters. *See, e.g.*, *Ne. Fla. Chapter of the Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (stating broadly that an injury is irreparable "only if it cannot be undone through monetary remedies"). *But see, e.g.*, *Scott v. Roberts*, 612 F.3d 1279, 1294–95 (11th Cir. 2010) (discussing situations where an injury is irreparable even though "a later money judgment might undo" it); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) (stating that trademark infringement causes irreparable harm, even though the trademark holder was also seeking monetary damages); *Fla. Businessmen for Free Enter. v. City of Hollywood*, 648 F.2d 956, 958 n.2 (5th Cir. Unit B June 1981) (stating that lost profits may amount to irreparable injury if they are "difficult or impossible to calculate").

Addressing that issue now, we can see that the collectability of a future money judgment to redress future harms is relevant in determining whether legal remedies are "adequate" such that they preclude injunctive relief under § 7402(a). The very nature of equitable power—the thing that distinguishes it from law—is its flexible and discretionary nature, its ability to respond to real-world practicalities,

16

and its general aversion to rules that let bad actors capitalize on legal technicalities. *See, e.g.*, Roscoe Pound, *The Decadence of Equity*, 5 Colum. L. Rev. 20 (1905).

Equity courts have long recognized "extraordinary circumstances," including the likelihood that a defendant will never pay, as one way to "give rise to the irreparable harm necessary for a preliminary injunction." 11A Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013); *see also Ernst & Whinney*, 735 F.2d at 1301 (citing Wright & Miller for its "general discussion of equitable principles governing [the] injunctive remedy"). More specifically, "most courts sensibly conclude that a damage judgment against an insolvent defendant is an inadequate remedy." Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 Harv. L. Rev. 687, 716 (1990); *see also, e.g.*, *Lakeview Tech., Inc. v. Robinson*, 446 F.3d 655, 657 (7th Cir. 2006) (noting that the "[a]bility to *calculate* damages" does not make a remedy adequate "if the plaintiff cannot *collect* the award").[4]

Indeed, the Supreme Court long ago stressed the practical nature of the equitable inquiry, stating that it "is not enough that there is a remedy at law; it must be plain and adequate, or in other words, as practical and as efficient to the ends of justice and its prompt administration, as the remedy in equity." *Boyce's Ex'rs v. Grundy*, 28 U.S. (3 Pet.) 210, 215 (1830). The district court's categorical rule that

---

[4] The IRS also points to district court cases purportedly granting injunctions in circumstances similar to this case, but we place little weight on them. First, the IRS concedes that many of these cases were the result of default or consent orders, so their propriety may not have been subject to the sort of vigorous litigation that would give them persuasive value. Second, the relevance of out-of-circuit cases is further watered down by the fact that some courts—unlike this Court—have not held injunctions under § 7402(a) to the traditional equitable requirements.

a case involving calculable money damages can never warrant injunctive relief, regardless of a plaintiff's ability to collect on a future judgment, is discordant with the history and purposes of equity jurisprudence.

The fact that the IRS is attempting to avoid *future* losses is key.  As the IRS notes, it "is an involuntary creditor; it does not make a decision to extend credit." *In re Haas*, 31 F.3d 1081, 1088 (11th Cir. 1994).  As long as the brothers continue to accrue employment taxes, the IRS continues to lose money.  This sets the IRS apart from the position of other creditors (who can cut their losses by refusing to extend additional credit), and—crucially—means that the injunction sought is not simply an attempt to provide security for *past* debts.  Rather, the proposed injunction here would staunch the flow of ongoing *future* losses as the brothers continue to accumulate tax liabilities—unlike in cases where the loss has already been inflicted or would be attributable to a single event, where we have stated that injuries are irreparable only when they "cannot be undone through monetary remedies." *E.g.*, *Scott*, 612 F.3d at 1295 (quoting *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987)).

Indeed, the record and the district court's own findings demonstrate that the government's proposed injunctive relief is "appropriate for the enforcement of the internal revenue laws," 26 U.S.C. § 7402(a), and that the government will likely suffer irreparable injury absent an injunction.  Among other things, the district court noted that Askins & Miller had "a proclivity for unlawful conduct," had "diverted and misappropriated" the employment taxes it had withheld from its employees' wages, and was "likely to continue ignoring" its employment tax

18

obligations. The IRS's declaration demonstrates that, over a period of several years, it expended considerable resources making numerous—and unsuccessful—attempts to collect Askins & Miller's unpaid taxes. And in the face of all that, as the declaration explained, Askins & Miller is effectively judgment-proof. In short, the record amply demonstrates that, absent the requested injunction, the government will continue to suffer harm from Askins & Miller's willful and continuing failure to comply with its employment tax obligations—including lost tax revenue and the expenditure of a disproportionate amount of its resources monitoring Askins & Miller and attempting to bring it into compliance—and that, in all likelihood, the government will never recoup these losses.

The district court relied primarily on our decision in *Rosen v. Cascade International, Inc.*, 21 F.3d 1520 (11th Cir. 1994), but *Rosen* is an uncomfortable fit here. As background, shareholders in that case brought a suit for money damages against a company and its officers because of alleged securities fraud. *Id.* at 1522. To ensure that the defendants would be able to satisfy any money judgment ultimately obtained in the litigation, the district court entered a preliminary injunction freezing the assets of one of the defendants. *Id.* On appeal, we held that the district court lacked authority to enter that injunction because "cases in which the remedy sought is the recovery of money damages do not fall within the jurisdiction of equity," and as a general rule of federal equity, "a court may not reach a defendant's assets unrelated to the underlying litigation and freeze them so that they may be preserved to satisfy a potential money judgment." *Id.* at 1527 (internal quotation marks and citation omitted). We also noted that a request

19

for prejudgment attachment under Federal Rule of Civil Procedure 64, rather than a motion for a preliminary injunction under Rule 65, provided the appropriate means to seek an asset freeze. *Id.* at 1530–31. Looking to state law (as the Rule requires), we concluded that the plaintiffs had not shown that they were entitled to Rule 64 relief. *Id.*

The differences between that case and this one announce themselves rather clearly. *Rosen* asked "whether a district court has the power to enter a preliminary injunction freezing the assets of a defendant before trial *in a case where the plaintiffs ultimately seek only money damages*." *Id.* at 1526 (emphasis added). That damages-only fact was front and center: we explained that a preliminary injunction is appropriate only where it seeks relief of the "same character" as the final relief sought, and that the asset freeze in that case was not of the same character as the ultimate relief because the plaintiffs there "sought only the award of monetary damages—and not equitable relief." *Id.* at 1527, 1529 (internal quotation marks and citation omitted); *accord Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999); *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507 (11th Cir. 1994).

Here, in contrast, the IRS's complaint asked for a permanent injunction providing prospective equitable relief for anticipated future violations—the same relief sought by the preliminary injunction at issue. Indeed, we have already held that *Rosen* does not apply where the complaint itself seeks a permanent injunction. *Levi Strauss & Co.*, 51 F.3d at 987; *see also SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005) (per curiam) (holding that *Grupo Mexicano* does not

20

apply where the complaint seeks equitable relief).  As *Rosen* itself was careful to note, a preliminary injunction "is always appropriate to grant intermediate relief of the same character as that which may be granted finally."  *Rosen*, 21 F.3d at 1527 (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).[5]

What's more—and contrary to the district court's reading—nothing in *Rosen* suggests that the IRS has not shown an irreparable injury for purposes of a preliminary injunction.  The *Rosen* court's statement that the "test of the inadequacy of a remedy at law is whether a judgment could be obtained, not whether, once obtained it will be collectible," 21 F.3d at 1531 (quoting *St. Lawrence Co., N.V. v. Alkow Realty, Inc.*, 453 So. 2d 514, 514–15 (Fla. Dist. Ct. App. 1984)), was made in the context of a Rule 64 analysis relating to prejudgment attachment.  As we have said, Rule 64 looks to the law of the state in which the court sits.  *See* Fed. R. Civ. P. 64(a).  So this statement in *Rosen* merely described Florida law governing prejudgment attachment; it did not determine (or even describe) federal equitable power.

---

[5] We also note that, for at least a portion of the employment taxes at issue, the assets that the injunction would reach are not "unrelated"—indeed, they do not even wholly belong to the defendants—because when an employer withholds employees' taxes, the withheld money is held in trust for the United States.  *See Thibodeau v. United States*, 828 F.2d 1499, 1506 (11th Cir. 1987) (per curiam).  So at least for this portion of the taxes, the IRS has an equitable interest that might qualify it for relief analogous to the "creditor's bill" recognized in English courts of equity.  *See Grupo Mexicano*, 527 U.S. at 319–20 & n.5 ("Some cases suggested that there was an exception [to the requirement that a judgment be obtained before bringing a creditor's bill] where the debt was admitted or confessed, at least if the creditor possessed an interest in the debtor's property.").

In sum, the district court erred in applying a categorical rule that because tax liability may be calculated and sought in an action for damages, it necessarily precludes injunctive relief under § 7402(a).

### B. Rule 65(d)

The district court also suggested that "the United States' proposed injunction would be unenforceable" as an overbroad "obey-the-law" injunction. It is true that we have "questioned the enforceability of obey-the-law injunctions" because "they lack specificity and deprive defendants of the procedural protections that would ordinarily accompany a future charge of a violation." *SEC v. Goble*, 682 F.3d 934, 949 (11th Cir. 2012). Such injunctions are disfavored because they often run afoul of Rule 65(d)'s requirement that injunctions state their terms specifically and "describe in reasonable detail" the "act or acts restrained or required." Fed. R. Civ. P. 65(d). But here, the "obey-the-law" problem does not doom the IRS's proposed injunction—the injunction plainly requires more of the Askins brothers than the law requires of others, and where it *does* direct action consistent with the law, it does so for specific provisions that the Askins brothers claim they already understand.

Backing up, the specificity requirements in Rule 65(d) are "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Goble*, 682 F.3d at 950 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) (per curiam)). An injunction "should clearly let [the] defendant know what he is ordered to do or not to do" and "should be phrased in terms of

22

objective actions, not legal conclusions." *Id.* (quoting *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001)). A defendant "should only be required to look within the four corners of the injunction to determine what he must do or refrain from doing." *Id.* at 952 (internal quotation marks and citation omitted). But the "degree of particularity required depends on the nature of the subject matter," and "at times an injunction that orders a defendant to comply with a statute may be appropriate." *Id.* at 950 (internal quotation marks and citation omitted). That is the case where the statutory terms are specific and the defendant clearly knows what conduct is prohibited or required. *Id.* at 950–51 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949)).

The IRS's proposed injunction passes muster here based on the district court's own findings. The district court found that the "statutes with which Defendants must comply are specific, and the record demonstrates that they are well aware of the conduct the proposed injunction addresses, their failure to remit to the IRS taxes withheld from their employees." Askins & Miller does not contest its tax liabilities and has engaged with the IRS for the better part of a decade in the IRS's repeated efforts to ensure compliance. The district court also found that the IRS demonstrated the defendants' "proclivity for unlawful conduct," which cuts in favor of a broad injunction. *Cf. McComb*, 336 U.S. at 192 (noting that broad injunctions "are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown"). Finally, the proposed injunction goes well beyond merely requiring compliance with the employment tax laws. In fact, it lists numerous concrete actions for the defendants to take—to name only a few,

23

segregating their funds, informing the IRS of any new business ventures, and filing various periodic affidavits—well beyond what a simple "obey-the-law" injunction would look like.  In short, this case does not raise the sort of fair notice concerns that Rule 65(d) is designed to address.

## V.

Because the district court erroneously imposed a categorical rule that prevented a proper exercise of its broad equitable discretion, we vacate its order denying the IRS's request for a preliminary injunction against the Defendants-Appellees.  On remand, the district court should consider the collectability of a future money judgment in determining whether that remedy is "adequate."  It should also consider any relevant factual developments that may affect the propriety of the injunctive relief sought, including the defendants' assertion that Askins & Miller is no longer in business and the IRS's contention that it may need to seek additional injunctive relief in light of those developments.  As we have already explained, this analysis is distinct from the mootness issue that we have addressed.  Apart from what we have already said, we express no opinion on whether an injunction is ultimately appropriate.  Rather, we leave it for the district court on remand to exercise its equitable discretion consistent with the principles in this opinion.

**VACATED AND REMANDED.**

24